RECEIVED
8/27/2026
KELLY L. STEPHENS, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**NATURAL RESOURCES DEFENSE COUNCIL, INC., OHIO ENVIRONMENTAL COUNCIL, AND SIERRA CLUB,**

**Petitioners,**

**v.**

**ENVIRONMENTAL PROTECTION AGENCY,**

**Respondent.**

**Case No. __________**

## PETITION FOR REVIEW

Pursuant to Federal Rule of Appellate Procedure 15 and section 307(b) of the Clean Air Act, 42 U.S.C. § 7607(b), Natural Resources Defense Council, Inc., the Ohio Environmental Council, and Sierra Club ("Petitioners"), petition this Court to review the Environmental Protection Agency's final agency action entitled "Air Plan Approval; Ohio; Redesignation of the Cleveland, OH Area to Attainment of the 2015 Ozone Standard," published at 91 Fed. Reg. 39,019 (June 29, 2026). A

copy of the final agency action is attached hereto as Attachment A. The agency docket numbers for the rule are EPA–R05–OAR–2025–3654; FRL–13297–02–R5.

This case is related to Case Nos. 26-3769 and 26-3770, petitions for review filed on August 25, 2026, in this Court challenging the Environmental Protection Agency's approval of revisions to Ohio's State Implementation Plan addressing reasonably available control technology requirements for major sources of volatile organic compound and nitrogen oxides in the Cleveland area, which involve some of the same parties and facts.

Dated: August 27, 2026

Respectfully Submitted,

*/s/ Thomas Zimpleman*
Thomas Zimpleman
Natural Resources Defense Council
1152 15th St. NW, Suite 300
Washington, DC 20005
tzimpleman@nrdc.org
Tel: (202) 513-6244

*/s/ Abirami Vijayan*
Abirami Vijayan
Natural Resources Defense Council
1152 15th St. NW, Suite 300
Washington, DC 20005
avijayan@nrdc.org
Tel: (202) 836-9866

*/s/ Sarah A. Buckley*
Sarah A. Buckley
Natural Resources Defense Council
1152 15th St. NW, Suite 300
Washington, D.C. 20005
sbuckley@nrdc.org

Tel: (202) 836-9555

Attorneys for Natural Resources
Defense Council

*/s/ Jeffrey Hammons*
Jeffrey Hammons
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
jhammons@catf.us
Tel: (771) 241-6481

*/s/ Hayden Hashimoto*
Hayden Hashimoto
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
hhashimoto@catf.us
Tel: (617) 624-0234

Attorneys for Petitioner the Ohio
Environmental Council

*/s/ Priyam Desai*
Priyam Desai
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
priyam.desai@sierraclub.org
Tel: (415) 294-0910

Attorney for Petitioner Sierra Club

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Petition for Review and Rule 26.1 Disclosure Statement of Petitioners is being served via First Class Mail to each of the following addresses on this 27th day of August, 2026:

Lee Zeldin
EPA Headquarters (MC 1101A)
United States Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460

Todd Blanche
Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

Sean Donahue, General Counsel
Office of General Counsel (MC 2310A)
United States Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460

Adam R.F. Gustafson, Assistant Attorney General
Energy and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

Additionally, I hereby certify that a single copy of the foregoing Petition for Review and Rule 26.1 Disclosure Statements of Petitioners will be sent via certified mail, return receipt requested, to the following address once I obtain a copy time-stamped by the Clerk of the Court:

Correspondence Control Unit
Office of General Counsel (2311)
United States Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460

Dated: August 27, 2026

Respectfully submitted,

*/s/Thomas Zimpleman*
Thomas Zimpleman

# ATTACHMENT A

## PART 165—REGULATED NAVIGATION AREAS AND LIMITED ACCESS AREAS

■ 1. The authority citation for part 165 continues to read as follows:

**Authority:** 46 U.S.C. 70034, 70051, 70124; 33 CFR 1.05–1, 6.04–1, 6.04–6, and 160.5; Department of Homeland Security Delegation No. 00170.1, Revision No. 01.4.

■ 2. Add § 165.T08–0627 to read as follows:

**§ 165.T08–0627 Safety Zone; West Monroe, LA.**

(a) *Location.* The following area is a safety zone: All waters of the Ouachita River from surface to bottom, between mile markers 166.5 and 167.5.

(b) *Definitions.* As used in this section, *designated representative* means a Coast Guard Patrol Commander, including a Coast Guard coxswain, petty officer, or other officer operating a Coast Guard vessel and a Federal, State, and local officer designated by or assisting the Captain of the Port Sector Lower Mississippi River (COTP) in the enforcement of the safety zone.

(c) *Regulations.* (1) Under the general safety zone regulations in subpart C of this part, you may not enter the safety zone described in paragraph (a) of this section unless authorized by the COTP or the COTP's designated representative.

(2) To seek permission to enter, contact the COTP or the COTP's representative on VHF–FM channel 16 or by telephone at (866) 360–3386. Those in the safety zone must comply with all lawful orders or directions given to them by the COTP or the COTP's designated representative.

(d) *Enforcement period.* This section will be enforced from 8 p.m. to 11 p.m. on July 4, 2026.

**D.P. Kilcullen,**

*Captain, U.S. Coast Guard, Captain of the Port Sector Lower Mississippi River.*

[FR Doc. 2026–13028 Filed 6–26–26; 8:45 am]

BILLING CODE 9110–04–P

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Parts 52 and 81

**[EPA–R05–OAR–2025–3654; FRL–13297–02–R5]**

## Air Plan Approval; Ohio; Redesignation of the Cleveland, OH Area to Attainment of the 2015 Ozone Standard

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is approving the request from the Ohio Environmental Protection Agency (Ohio EPA) to redesignate the Cleveland, Ohio area to attainment for the 2015 ozone National Ambient Air Quality Standards (NAAQS) because the request meets the statutory requirements for redesignation under the Clean Air Act (CAA). Ohio EPA submitted this request on December 8, 2025. The EPA is approving, as a revision to the Ohio State Implementation Plan (SIP), the State's plan for maintaining the 2015 ozone NAAQS through 2038 in the Cleveland area. The EPA is also finding adequate and approving Ohio's 2032 and 2038 volatile organic compound (VOC) and oxides of nitrogen ($NO_X$) motor vehicle emissions budgets (budgets) for the Cleveland area. Additionally, the EPA is adjusting the deadline for Ohio to submit Serious SIP revisions for the Cleveland area. Finally, the EPA is approving the Enhanced motor vehicle inspection and maintenance (I/M) program certification and clean fuel vehicle program (CFVP) certification SIP revisions submitted by Ohio EPA on December 19, 2025, and January 12, 2026, pursuant to section 110 and part D of the CAA, because they satisfy Serious SIP requirements for the Cleveland area under the 2015 ozone NAAQS.

**DATES:** This final rule is effective on June 29, 2026.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA–R05–OAR–2025–3654. All documents in the docket are listed on the *https://www.regulations.gov* website. Although listed in the index, some information is not publicly available, *i.e.,* Confidential Business Information (CBI), Proprietary Business Information (PBI), or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available either through *https://www.regulations.gov* or please contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section for additional information.

**FOR FURTHER INFORMATION CONTACT:** Cecilia Magos, Air and Radiation Division (AR–18J), Environmental Protection Agency, Region 5, 77 West Jackson Boulevard, Chicago, Illinois 60604, telephone number: (312) 886–7336, email address: *magos.cecilia@epa.gov.*

**SUPPLEMENTARY INFORMATION:** Throughout this document whenever "we," "us," or "our" is used, we mean the EPA. We use multiple acronyms and terms in this preamble. While this list may not be exhaustive, to ease the reading of this preamble and for reference purposes, the EPA defines the following terms and acronyms here:

CAA Clean Air Act
CAIR Clean Air Interstate Rule
CBI Confidential Business Information
CDD Clean Data Determination
CSAPR Cross-State Air Pollution Rule
CFVP Clean Fuel Vehicle Program
EPA Environmental Protection Agency
EMP Enhanced Monitoring Plan
GHG Greenhouse Gas
I/M Inspection and Maintenance
MOVES Motor Vehicle Emission Simulator
NAAQS National Ambient Air Quality Standard
$NO_X$ Oxides of Nitrogen
NSR New Source Review
Ohio EPA Ohio Environmental Protection Agency
PBI Proprietary Business Information
ppm parts per million
PSD Prevention of Significant Deterioration
PSM Performance Standard Modeling
RACM Reasonable Available Control Measures
RACT Reasonable Available Control Technology
RFP Reasonable Further Progress
SIP State Implementation Plan
VOC Volatile Organic Compound

*Organization of this document.* This supplementary information section is arranged as follows:

I. Executive Summary and Background
II. What action is the EPA taking?
III. Response to Comments
A. Serious SIP Deadline Extension
B. Planning Requirements
C. Repealed Federal Rules
D. Nonattainment New Source Review
IV. Statutory and Executive Order Reviews

## I. Executive Summary and Background

The EPA is redesignating the Cleveland area to attainment of the 2015 ozone standard, in accordance with Ohio EPA's December 8, 2025, submission. The Cleveland area includes Cuyahoga, Geauga, Lake, Lorain, Medina, Portage, and Summit Counties. The background of this action was discussed in detail in the EPA's proposal dated April 10, 2026 (91 FR 18355). In that proposal, we noted that, under the CAA, the EPA may redesignate nonattainment areas to attainment if complete, quality-assured data show that the area has attained the standard and the area meets the other CAA redesignation requirements in section 107(d)(3)(E). The proposed rule provides a detailed discussion of how Ohio has met these CAA requirements

and the EPA's rationale for approving the redesignation request.

As discussed in the proposed rule, quality-assured and certified monitoring data for 2023–2025 show that the area has attained the 2015 ozone standard, and the EPA has determined that attainment is due to permanent and enforceable measures. The EPA is approving, as a revision to the Ohio SIP, the State's maintenance plan for the area. The maintenance plan is designed to keep the Cleveland area in attainment of the 2015 ozone NAAQS through 2038. Additionally, the EPA is finding adequate and approving Ohio's newly adopted 2032 and 2038 motor vehicle emissions budgets for $NO_X$ and VOC in the area that are supported by Ohio's maintenance demonstration.

The EPA is also adjusting the deadline for Ohio to submit Serious SIP revisions for the Cleveland area to no later than December 5, 2026. Finally, as discussed in the proposed rule, the EPA is approving several elements which meet section 110 and part D of the CAA and the EPA's regulations for an area which is classified as Serious nonattainment for the 2015 ozone NAAQS. These elements include Enhanced I/M certification and CFVP certification SIP revisions submitted by Ohio EPA on December 19, 2025, and supplemented on January 12, 2026. In separate actions, the EPA is approving Ohio's VOC and $NO_X$ reasonably available control technology (RACT) submissions as meeting the requirements for Moderate nonattainment areas. With these approvals of Ohio's SIP submissions, all SIP requirements applicable to redesignation are fully approved.

After publication of the proposed redesignation rule, the EPA finalized an additional rulemaking related to attainment of the 2015 ozone standard in the Cleveland nonattainment area. The EPA issued a determination that the area is attaining the 2015 ozone NAAQS based on air quality monitoring data from 2023 through 2025, *i.e.,* a clean data determination (CDD), on May 14, 2026 (91 FR 27211). In issuing the CDD, the EPA took notice and comment on its concurrence with a December 8, 2025, exceptional event demonstration submitted by Ohio EPA. The demonstration requested exclusion of wildfire event-influenced data from the 2023–2025 design value period for the 2015 ozone NAAQS for the Cleveland nonattainment area.

## II. What action is the EPA taking?

The EPA finds that the Cleveland area is meeting the requirements for redesignation under section 107(d)(3)(E) of the CAA. The EPA is changing the legal designation of the Cleveland area from nonattainment to attainment for the 2015 ozone NAAQS in accordance with Ohio EPA's December 8, 2025, request. The EPA is approving the State's plan for maintaining the 2015 ozone NAAQS in the Cleveland area through 2038. As part of the maintenance plan, the EPA is finding adequate and approving the newly established 2032 and 2038 motor vehicle emissions budgets for the Cleveland area. The EPA is adjusting the deadline for Ohio to submit Serious SIP revisions for the Cleveland area to no later than December 5, 2026. Finally, pursuant to section 110 and part D of the CAA, the EPA is approving the Enhanced I/M certification and CFVP certification SIP revisions submitted by Ohio EPA on December 19, 2025, and supplemented on January 12, 2026.

In accordance with 5 U.S.C. 553(d), the EPA finds there is good cause for these actions to become effective immediately upon publication. This is because a delayed effective date is unnecessary due to the nature of a redesignation to attainment, which relieves the area from certain CAA requirements that would otherwise apply to it. The immediate effective date for this action is authorized under both 5 U.S.C. 553(d)(1), which provides that rulemaking actions may become effective less than 30 days after publication if the rule "grants or recognizes an exemption or relieves a restriction," and section 553(d)(3), which allows an effective date less than 30 days after publication "as otherwise provided by the agency for good cause found and published with the rule." The purpose of the 30-day waiting period prescribed in section 553(d) is to give affected parties a reasonable time to adjust their behavior and prepare before the final rule takes effect. This rule, however, does not create any new regulatory requirements such that affected parties would need time to prepare before the rule takes effect. Rather, this rule relieves the State of planning requirements for this ozone nonattainment area. For these reasons, the EPA finds good cause under 5 U.S.C. 553(d)(3) for these actions to become effective on the date of publication of these actions.

## III. Response to Comments

The EPA provided a 30-day review and comment period for the April 10, 2026 (91 FR 18355) proposed rule. The comment period ended on May 11, 2026. The EPA received one supportive and two adverse comment submissions. Summaries of the adverse comments and the EPA's responses are provided below. All comments submitted during the public comment period are available in the docket of this action.

*Comment:* A commenter raises several issues and calls for supplementing the record for greater transparency. The commenter requests further explanation of the exceptional event days related to attainment and a discussion of how the affected days approved or not would impact the design value calculation.

*Response:* These comments appear to be based on a misunderstanding of this action. This action is finalizing the proposed approval of Ohio EPA's December 8, 2025, request to redesignate the Cleveland area based on attaining monitoring data for 2023–2025, and the EPA's determination that the area meets all other requirements for redesignation at CAA section 107(d)(3)(E). In a separate final action, a CDD, the EPA determined that the Cleveland area is attaining the 2015 ozone NAAQS, in accordance with 40 CFR 50.19 and appendix U of part 50, based on three complete, consecutive calendar years of quality-assured air quality data for all monitoring sites in the area. *See* 91 FR 27211, May 14, 2026. Per the CDD, the EPA took final agency action on Ohio EPA's exceptional events request submitted on December 8, 2025, and the EPA's concurrence issued on January 12, 2026. The EPA's technical support document and Ohio EPA's exceptional events demonstration data and analysis are included in the docket of that action. Comments regarding the explanation of exceptional event days and impact on the design value calculation fall outside of the scope of this action. These concerns would have been more appropriately raised in the context of the Cleveland CDD notice.

*Comment:* The commenter requests information on why the EPA believes the design value threshold is sufficient to support approval of the redesignation and maintenance plan approval through 2038.

*Response:* Regarding the sufficiency of the design value threshold, the design values are consistent with the individual NAAQS as described in 40 CFR part 50 and are used to assess progress towards meeting the NAAQS. To attain the 2015 ozone NAAQS, the ozone design value for the area must not exceed 0.070 parts per million (ppm) at each monitor, calculated as the 3-year average of the annual fourth-highest daily maximum 8-hour average ozone concentrations when truncated after the thousandth decimal place, at all of the ozone monitoring sites in the area. *See* 40 CFR 50.19 and appendix U to 40 CFR

part 50. Under CAA section 107(d)(3)(E)(i), for redesignation of a nonattainment area to attainment, the CAA requires the EPA to determine that the area has attained the applicable NAAQS. The statute does not require the EPA to assess by what margin the area is attaining. The Cleveland area's 3-year ozone design value for 2023–2025 is 0.070 ppm, which meets the 2015 ozone NAAQS, and is therefore supportive of a redesignation. The margin by which the area (or monitor) attains the NAAQS is not relevant to the question of whether or not the area is attaining the NAAQS and furthermore, its eligibility for redesignation.

As stated in the proposed rule, CAA section 107(d)(3)(E)(iv) provides that the Administrator must fully approve a ''maintenance plan for the area as meeting the requirements of sections 175A.'' CAA section 175A sets forth the elements of a maintenance plan for areas seeking redesignation from nonattainment to attainment, including a demonstration of continued attainment of the NAAQS for at least 10 years after the Administrator approves a redesignation to attainment. Ohio has demonstrated maintenance of the 2015 ozone NAAQS for the Cleveland area through 2038 by projecting that current and future emissions of VOC and $NO_X$, the pollutant precursors that contribute to ozone formation, remain at or below attainment year emission levels. The requirement for a maintenance plan includes the requirement for contingency provisions to be triggered should an area violate the NAAQS after redesignation, which illustrates that the CAA anticipates some possibility that areas may in the future violate the NAAQS despite meetings all requirements under CAA section 107(d)(3)(E). In this final rule, the EPA finds the design values sufficient to support redesignation and approves Ohio's plan for maintaining the NAAQS through 2038, as described in the proposed rule.

*Comment:* The commenter requests information on contingencies available in case future monitoring changes prior to final action.

*Response:* With respect to the contingencies available in case of future monitoring changes, as stated in the proposed rule, the EPA will not take final action to redesignate the Cleveland area to attainment if the design value of a monitoring site in the area violates the NAAQS prior to final approval of the redesignation. Further, any modification to a State's ambient air quality monitoring network is subject to review and approval by the Regional Administrator. *See* 40 CFR 58.14 and appendix D to 40 CFR part 58. Also, as demonstrated by the contingency provisions required by section 175A(d), the CAA clearly anticipates and provides for situations where an area might monitor a violation of the NAAQS after having been redesignated to attainment, and leaves it to the Administrator to determine whether redesignation to nonattainment and a new nonattainment plan SIP submission is necessary in such cases. Ohio's maintenance plan also accounts for this possibility by including a violation of the NAAQS as an action level trigger requiring the implementation of control measures to reduce ozone precursor emissions and bring the area back into attainment.

*Comment:* The commenter requests further clarification of the EPA's rationale behind extending the deadline for Ohio's Serious SIP revisions.

*Response:* As stated in the proposed rule and further explained in our responses below, the EPA outlined in detail the reasoning for an adjustment of the Serious SIP submission deadline. The EPA's interpretation of CAA section 107(d)(3)(E)(v) has informed State and Federal implementation of redesignations for more than three decades. Under this interpretation, the State assembled and invested considerable resources finalizing their redesignation to attainment request for the Cleveland area, including considerable technical analyses and providing a public inspection period. Given that the State submitted its request on Monday, December 8, 2025, only three days after the Sixth Circuit Court of Appeals issued its decision, Ohio's redesignation request did not address the Serious SIP requirements.

Under its statutory and regulatory authority stated in the proposed rule, the EPA is making a one-time adjustment of the Serious SIP submission deadline for the Cleveland area from January 1, 2026, to December 5, 2026, allowing the EPA to review the redesignation request consistent with Ohio's expectations at the time it submitted its request.

*Comment:* A commenter requests the EPA make the basis of the 2032 and 2038 motor vehicle emissions budgets easier to evaluate.

*Response:* As stated in the proposed rule, under the CAA, States are required to submit control strategy SIPs, which include motor vehicle emissions budgets for criteria pollutants, including ozone and their precursor pollutants (VOC and $NO_X$), to address pollution from onroad transportation sources. Per 40 CFR 93.118(b)(2), a maintenance plan establishes a budget for the last year of the maintenance plan at a minimum and could also establish budgets for other years. In this case, the area's 2015 ozone NAAQS maintenance plan establishes $NO_X$ and VOC budgets for the last year it covers, 2038, and for an earlier year, 2032. The term, ''motor vehicle emissions budget'' is defined at 40 CFR 93.101. Ohio EPA developed their VOC and $NO_X$ budgets for the area through an interagency consultation process that included Federal, State, and local agencies, consistent with the control strategy provisions. The State submitted all analyses and assumptions of the 2032 and 2038 budgets for the EPA's review. *See* ''Main Document—Cleveland Ozone Redes Request'' and ''Appendix C—Cleveland Ozone Redes Request.'' In the proposed rule, the EPA listed the adequacy criteria in 40 CFR 93.118(e)(4) and stated that the budgets met them. The EPA included all appropriate analyses and documentation in the docket of this action to ease further review.

### *A. Serious SIP Deadline Extension*

*Comment:* Some commenters assert that the EPA's proposed extension contravenes the recent Sixth Circuit decision in *Sierra Club* v. *EPA,* 161 F.4th 934 (6th Cir. 2025) (''*Sierra Club*''). The commenters claim that the EPA cannot rely on the *Sierra Club* decision to justify its proposed adjustment of the Serious SIP deadline, and that a proposed extension would simply mean that Serious area nonattainment plan would not be overdue yet. The commenters note that the current deadline for Serious area SIP submissions is January 1, 2026, established via rule on January 17, 2025, meaning Serious area SIP requirements have been ''applicable'' to the Cleveland area since then. *See* 90 FR 5651, January 17, 2025. Therefore, the commenters contend that Serious area SIP requirements apply to the Cleveland area and the EPA is barred from approving a redesignation request.

*Response:* The SIP and planning requirements added to the CAA by the 1990 amendments became final on November 15, 1990. On September 4, 1992, less than two months before some of those requirements were set to take effect, the Director of the EPA's Air Management Division John Calcagni issued a memo outlining the EPA's procedures and standards of review for redesignating areas to attainment in the midst of these new statutory requirements.[1] For more than 30 years,

[1] Calcagni, John, Director, Air Quality Management Division, EPA Office of Air Quality

Continued

the EPA and States have relied on the "Calcagni Memorandum" as a guidepost for the timelines and cooperative exchanges outlined by the CAA for redesignation requests. One important component of the memo was its interpretation of CAA section 107(d)(3)(E)(v), that a State will have satisfied that criterion if it has met all the applicable requirements in section 110 and Part D that were due as of the time of the State's redesignation request. On Friday, December 5, 2025, the Sixth Circuit rejected that longstanding interpretation of CAA section 107(d)(3)(E)(v). On Monday, December 8, 2025, Ohio submitted its redesignation request. Less than one month later, the Serious SIP submittal deadlines passed.

The EPA does not dispute the commenters' assertion that the EPA's January 17, 2025, rule established a January 1, 2026, deadline for Serious SIP submissions. However, nothing in CAA section 182(i) states that the EPA is limited to extending deadlines under that provision only once for reclassified areas. Section 182(i) states that the EPA "may adjust *any* applicable deadlines" consistent with the provision. And the EPA's position, as outlined in its proposal, is that upon *finalization* of this action, the Serious area SIP deadlines would be extended. Once the EPA's extension is finalized, no party (the EPA or the public) would be able to enforce the original deadline that has now been extended—the State would now have until the extended deadline to meet those requirements.[2]

As stated in the proposed rule, the assembly and preparation of a redesignation request requires many months, and sometimes years. All that time, Ohio's work towards its redesignation request relied on an interpretation that the EPA had consistently applied over three decades.

*Comment:* The commenters contend that the EPA cannot suggest that the 6th Circuit ruling in *Sierra Club* authorizes a proposed delay of the Cleveland 2015 ozone Serious area nonattainment deadline. The commenters cite the 6th Circuit's decision, which notes that "if the EPA grants a redesignation before the stricter reclassification) requirements come due, the problem (of the applicability of those requirements for purposes of redesignation) is avoided entirely," and contends that in the context of the decision, this is not a free pass to extend deadlines for purposes of beating out the clock on a redesignation request. The commenters assert that while the court acknowledged that EPA has "some leeway" in setting nonattainment plan deadlines for reclassified areas (the RACT SIP deadlines, in that case), the court did not hold that the EPA can arbitrarily extend the nonattainment plan deadlines for the purpose of allowing a State to avoid those deadlines before redesignation. The commenters also contend that the EPA's extension of the Serious SIP submittal deadline is inconsistent with the EPA's authority under CAA section 182(i).

*Response:* The EPA does not agree with the commenters' interpretation of the 6th Circuit's decision. Instead, the EPA interprets the section of the decision as a potential implementation pathway that harmonizes some of the practical difficulties, which the EPA alluded to in its brief, of requiring States to meet requirements potentially coming due after submission of their request. *See* brief for Respondent at 54–56, *Sierra Club,* 161 F.4th 934 (6th Cir. 2025) (No. 23–3583). The court acknowledged that extension of deadlines was an area in which the EPA had some authority and "leeway" and that granting a request prior to a deadline would avoid the applicability issue "entirely." The EPA's extension of the Serious SIP deadlines is consistent with the 6th Circuit's ruling. *Sierra Club* at 950–951.

*Comment:* The commenters argue that the EPA is exceeding its authority to adjust deadlines under CAA section 182(i). While commenters acknowledge that the EPA is permitted under CAA section 182(i) to "make such adjustment to the extent it is necessary or appropriate to assure consistency among the required Submissions under the applicable Moderate, Serious, and Severe nonattainment SIP requirements of CAA sections 182(b)–(d)," they claim that the EPA does not provide a "satisfactory" explanation of how the proposed adjustment is "necessary or appropriate to ensure consistency" among 182(c) Serious requirements that apply to Cleveland. Commenters further contend that the EPA's explanation, centered on Ohio's reliance interests in pre-*Sierra Club* understanding of what requirements it would need to meet in order to be redesignated is insufficient and outside the statutory criteria of CAA section 182(i). The commenters reject the EPA's analogy to *Wildearth Guardians* v. *EPA,* 830 F.3d 529, 539 (D.C. Cir. 2016)("*Wildearth Guardians*") as "inaccurate and misplaced." The commenters assert that two key circumstances were present in that case that are not present in this one: the EPA was exercising its general rulemaking and "gap-filling" authority under CAA section 301(a), and without an adjustment in the deadline, States would have otherwise been subject to overdue mandatory deadlines.

*Response:* The EPA disagrees with these comments. CAA section 182(i) states that States containing reclassified ozone areas shall meet the requirements of section 182(b) through (d) according to the schedules prescribed in connection with such requirements, "except that the Administrator may adjust any applicable deadlines (other than attainment dates) to the extent such adjustment is necessary or appropriate to assure consistency among the required submissions." Commenters contend that the Agency "correctly" exercised its authority under this provision in setting the original January 1, 2026, Serious area SIP deadline. In establishing that deadline, the EPA had noted that the deadline was "consistent with the overall schedule of the submission of substantive requirements" and "informed by the need to ensure that the reductions resulting from the Act's requirements are consistently due in time to influence an area's attainment by the attainment date, to the extent the applicable controls are necessary to achieve attainment by that date." 90 FR 5651, 5653 (January 17, 2025).

But the grant of authority in CAA section 182(i) is drafted in a manner that clearly confers upon the agency flexibility and discretion in carrying it out, and in setting deadlines for different areas with different circumstances, it naturally follows that there is more than one way to exercise that authority. In *Loper Bright Enters.* v. *Raimondo,* the Supreme Court stated, "[i]n a case involving an agency, of course, the statute's meaning may well be that the agency is authorized to exercise a degree of discretion," and cited statutes using "a term or phrase that 'leaves agencies with flexibility,' . . . such as 'appropriate' or 'reasonable' " as the classic examples of when the best reading of a statute is that it delegates discretionary authority to an agency. 603 U.S. 369, 394–95 (2024). CAA section 182(i) is just such a provision. Other than attainment dates, which the EPA may not change, the statute grants the Administrator authority to adjust "any" applicable deadline, with the limitations on that adjustment cabined by broad and expansive terms identified by the Supreme Court in *Loper Bright.*

---

Planning and Standards, "Procedures for Processing Requests to Redesignate Areas to Attainment," September 4, 1992.

[2] *See Wildearth Guardians* v. *EPA,* 830 F.3d 529, 534–535 (D.C. Cir. 2016) (accepting that the EPA's rule setting new deadlines "superseded" all previously established deadlines).

Congress did not specify precisely what it meant by "consistency" nor which required submissions it was referring to. The thrust of the provision, which covers establishment of deadlines for any nonattainment area reclassified from Moderate to Severe for any ozone NAAQS, is a broad grant of authority to the Administrator to accommodate adjustment of deadlines under these many varied circumstances.

The EPA previewed its view that its authority under CAA section 182(i) was sufficiently expansive to accommodate different situations; in the 2025 rule establishing the "default" Serious area SIP submissions deadline of January 1, 2026, the EPA explicitly stated that "the default SIP submission deadlines could be adjusted where such adjustment is appropriate or necessary, through future notice-and-comment rulemaking in specific EPA actions." *See* 90 FR 5651, 5654 (January 17, 2025). One of the chief concerns informing the EPA's establishment of the January 1, 2026, deadline—namely, setting a deadline for nonattainment areas such that "reductions resulting from the Act's requirements are consistently due in time to influence an area's attainment by the attainment date, *to the extent the applicable controls are necessary to achieve attainment by that date*" [3]—is no longer applicable in the situation of the Cleveland-OH nonattainment area. This area has attained the NAAQS prior to its statutory and regulatory attainment date without the benefit of reductions associated with the Serious area requirements; while that does not render those requirements inapplicable, it does obviate the strict necessity of having those reductions in place to influence attainment by the attainment date, *i.e.,* one of the primary stated reasons for the default January 1, 2026, deadline. With those facts in mind and with the consideration of Ohio's reliance and expectation that they could be redesignated absent the Serious area requirements, there are appropriate reasons to differentiate, even if the result is some inconsistency, between Cleveland and other areas subject to the January 1, 2026, deadline that have not yet attained the NAAQS.

The EPA acknowledges that the precise circumstances present in the fact pattern at issue in *Wildearth Guardians* differs from the circumstances here, in that the subpart 4 implementation deadlines and reclassification timeframes had passed as of the time of the D.C. Circuit's ruling directing the EPA to implement particular matter requirements under subpart 4 in *NRDC v. EPA,* 706 F.3d 428 (D.C. Cir. 2013) and as of the time of the 6th Circuit's issuance of *Sierra Club* in December 2025, Ohio had not yet made its redesignation submission and the Serious area deadline had not yet passed. However, the EPA finds the commenters are overly focused on the technicality of the passed deadline; in reality, Ohio's redesignation request and maintenance SIP, which was submitted to the EPA on Monday December 8 following the 6th Circuit's issuance of *Sierra Club* on Friday, December 5, was clearly prepared under the previous framework that the request could be approved absent the Serious area requirements. While that Serious area deadline had not yet passed as of the Court's issuance of the *Sierra Club* decision, it would in a matter of weeks. And even if Ohio understood that the framework was currently subject to litigation and could be overturned, as commenters contend, that is no different than the States implementing particulate matter requirements under the incorrect subpart of the CAA. Those States also could have addressed precursors and requirements specific to subpart 4 in anticipation of the EPA receiving an adverse ruling, and elected instead to rely on the Agency's understanding of the statute. But it is entirely reasonable for a State or regulated party to rely upon the operating framework—particularly one that has been in place for decades—until there is clarity from a court that that framework is incorrect.

We therefore do not agree with commenters' contention that extending the Serious area SIP requirements deadline for the Cleveland area is outside the EPA's statutory authority or arbitrary and capricious.

### *B. Planning Requirements*

*Comment:* The commenters claim that Ohio has not met all the applicable requirements to the Cleveland 2015 ozone Serious nonattainment area under CAA section 107(d)(3)(E)(ii) as Ohio does not have a fully approved SIP under CAA section 110(k), therefore, barring the EPA from finalizing its proposed approval of Ohio's redesignation request. The commenters state the EPA failed to provide the "required reasonable rationale" to the claim that certain CAA section 110 elements are not applicable to the Cleveland nonattainment area for purposes of redesignation. The commenters request that the EPA assess whether Ohio has met its Good Neighbor obligations under 110(a)(2)(D)(i) for the 2015 ozone NAAQS which they allege the EPA incorrectly claims as not applicable to the area. They allege since the EPA has not fully approved the applicable SIP under CAA section 110(k)(3) and Ohio has not met all the requirements under CAA section 110, the EPA is barred under CAA sections 107(d)(E)(3)(ii) and (v) from finalizing Ohio's redesignation request.

*Response:* The EPA disagrees with the commenters' remarks. CAA section 110(a)(2)(D) requires that SIPs contain measures to prevent sources in a State from significantly contributing to air quality problems in another State. While the EPA noted in the proposed rule that programs such as the $NO_X$ SIP Call, Clean Air Interstate Rule (CAIR), and Cross-State Air Pollution Rule (CSAPR) were established to address transport of air pollutants, we also clearly stated that the section 110(a)(2)(D) requirements for a State are not linked with a particular nonattainment area's designation and classification. Further, the EPA concludes that the requirements linked with a particular nonattainment area's designation and classification are the relevant measures to evaluate in reviewing a redesignation request. Therefore, because the section 110(a)(2)(D) requirements apply to a State regardless of the designation of any one particular area in the State, the EPA further concludes that these requirements should not be construed to be applicable requirements for purposes of redesignation. The EPA is not taking any action, in this rulemaking, to determine whether the State of Ohio has satisfied the requirements of 110(a)(2)(D) with respect to the 2015 ozone NAAQS.

As previously stated, the EPA stands by its position that section 110 elements that are not connected with nonattainment plan submissions and not linked with an area's attainment status are not applicable requirements for purposes of redesignation. A State remains subject to these requirements after an area is redesignated to attainment. We conclude that only the section 110 and part D requirements which are linked with a particular area's designation and classification are the relevant measures which we may consider in evaluating a redesignation request. This approach is consistent with the EPA's existing policy on applicability of certain requirements for redesignation purposes, as well as with section 184 ozone transport requirements. *See* Reading, Pennsylvania, proposed and final rulemakings (61 FR 53174 through 53176, October 10, 1996), (62 FR 24826, May 7, 1997); Cleveland-Akron-Lorain, Ohio, final rulemaking (61 FR 20458,

[3] *See* 90 FR 5651, 5653 (January 17, 2025).

May 7, 1996); and Tampa, Florida, final rulemaking (60 FR 62748, December 7, 1995). *See also* the discussion on this issue in the Cincinnati, Ohio ozone redesignation (65 FR 37890, June 19, 2000), and in the Pittsburgh, Pennsylvania ozone redesignation (66 FR 50399, October 19, 2001), and in the St. Louis 1-hour ozone redesignation 68 FR 25418, 25426 through 27 (May 12, 2003). Both the 6th and 7th Circuits have agreed that the CAA provides the EPA with leeway to determine what is an ''applicable requirement'' for purposes of redesignation. *Sierra Club* v. *EPA,* 375 F.3d 537 (7th Cir. 2004). *See Wall* v. *EPA,* 265 F.3d 426 (6th Cir. 2001), upholding the EPA's interpretation of ''applicable requirements.'' Therefore, the EPA finds the redesignation request for the 2015 ozone NAAQS submitted by the State meets the applicable CAA section 110(k)(3) requirements and Ohio appropriately satisfies section 110 requirements applicable to the area. Therefore, under CAA section 107(d)(3)(E), the EPA is finalizing the proposed approval of Ohio's redesignation request.

*Comment:* The commenters contend that Ohio's redesignation request violates CAA section 107(d)(3)(E)(v)'s mandate, further stressed in the *Sierra Club* decision, as the area has not met *all* the applicable requirements under Part D for Cleveland before it can be redesignated. Specifically, the commenters assert that the area has not met the following requirements: CAA section 182(c)(2) attainment and Reasonable Further Progress (RFP) demonstrations; Serious area $NO_X$ and VOC RACT; CAA section 182(a)(1) emissions inventories; CAA section 182(a)(3)(B) emissions statement regulations; Serious area Nonattainment New Source Review (NSR); CAA section 172(c)(9) and section 182(c)(9) contingency measures.

*Response:* The EPA disagrees with the commenters' assertions. The EPA reviewed Ohio's 2015 ozone standard redesignation request for the Cleveland area and found that it met all the applicable requirements under CAA section 107(d)(3)(E)(v). With respect to CAA section 182(c)(2) requirements for areas classified as Serious, including the cited attainment and Reasonable Further Progress demonstrations, the EPA disagrees with the commenters' remarks.

On May 14, 2026 (91 FR 27211), the EPA determined that the Cleveland nonattainment area is meeting the 2015 ozone NAAQS. Therefore, these elements are not needed to redesignate the Ohio portion because the area has attained the 2015 ozone NAAQS. This rationale is outlined in 40 CFR 51.1318, the General Preamble, and the Calcagni Memorandum at 6 (''The requirements for reasonable further progress and other measures needed for attainment will not apply for redesignations because they only have meaning for areas not attaining the standard.''). The EPA concludes it is reasonable to interpret these provisions as not requiring areas that are meeting the ozone standard to make the SIP submissions to the EPA described in the provisions as long as the areas continue to meet the standard. The EPA notes that if such an area were to monitor a violation of the standard prior to being redesignated to attainment, however, the area would have to address the pertinent requirements and submit the SIP revisions described in those provisions to the EPA.

With respect to the Serious area $NO_X$ and VOC RACT requirement, the EPA is adjusting the Serious SIP submission deadline for the Cleveland area, providing Ohio with the necessary and appropriate time to address any submissions it determines necessary, including Serious RACT SIP requirements. The EPA's adjustment of the SIP submittal deadline to December 5, 2026, and the redesignation of the Cleveland area prior to that date, render the $NO_X$ RACT at the Serious major source threshold as not applicable for purposes of redesignation because they have not become due.

With respect to emissions inventories, by meeting the section 182(a)(1) emission inventory requirement, Ohio has also met the section 172(c)(3) requirement for a comprehensive, accurate, and current emissions inventory. The Calcagni Memorandum states that emissions inventory requirements of section 172(c) of the CAA are satisfied by the inventory requirements of the maintenance plan. (*See* the Calcagni Memorandum at 6). As stated in the proposed rule, the EPA approved Ohio's base year emissions inventory for the Cleveland area on March 3, 2021 (86 FR 12270) and July 7, 2025 (90 FR 29742) as required by CAA section 182(a)(1), contrary to the commenters' remarks.

Further, with respect to the emission statement regulations, Ohio will continue to update its emissions inventory at least once every three years consistent with the requirements of 40 CFR part 51, subpart A, and in 40 CFR 51.122, in accordance with section 182(a)(3). The EPA approved Ohio's emission statement SIP for the Cleveland area for the 2015 ozone NAAQS on July 11, 2017 (82 FR 31913).

With respect to Serious area Nonattainment NSR, since Prevention of Significant Deterioration (PSD) requirements will apply after redesignation, areas being redesignated need not comply with the requirement that a part D NSR program be approved prior to redesignation, provided that the area demonstrates maintenance of the NAAQS without a part D NSR program. A more detailed rationale for this view is described in the October 14, 1994, policy memorandum from Mary D. Nichols entitled ''Part D New Source Review (part D NSR) Requirements for Areas Requesting Redesignation to Attainment'' (Nichols Memorandum). PSD, a program that is the corollary of part D NSR for attainment areas, goes into effect in lieu of part D NSR upon redesignation. PSD requires that new sources demonstrate that emissions from their construction and operation will not cause or contribute to a violation of any NAAQS or PSD increment. The EPA most recently approved revisions to Ohio's PSD program on February 25, 2010 (75 FR 8496). The State has demonstrated that the areas will be able to maintain the standard without Part D NSR in effect, and the State's PSD program will become effective in the area upon redesignation to attainment. *See* the rationale set forth at length in the Nichols Memorandum, as well as the discussions of why full approval and retention of NSR is not required in redesignation actions in the following redesignation rulemakings: 60 FR 12459, 12467 through 12468 (March 7, 1995) (Detroit, MI); 61 FR 20458, 20469 through 20470 (May 7, 1996) (Cleveland-Akron-Lorain, OH); 66 FR 53665, 53669 (October 23, 2001) (Louisville, KY); 61 FR 31831, 31836 through 31837 (June 21, 1996) (Grand Rapids, MI); 73 FR 29436, 29440 through 29441 (May 21, 2008) (Kewaunee County, WI); 77 FR 34819, 34826 through 34827 (June 12, 2012) (Illinois portion of St. Louis, MO–IL).

With respect to CAA section 172(c)(9) and section 182(c)(9) contingency measure requirements, in the context of redesignations, the EPA has interpreted requirements related to attainment as not applicable for purposes of redesignation. For example, in the ''General Preamble for the Interpretation of Title I of the Clean Air Act Amendments of 1990,'' (General Preamble) 57 FR 13498, 13564 (April 16, 1992), the EPA stated that: ''[t]he section 172(c)(9) requirements are directed at ensuring RFP and attainment by the applicable date. These requirements no longer apply when an area has attained

the standard and is eligible for redesignation. Furthermore, section 175A for maintenance plans . . . provides specific requirements for contingency measures that effectively supersede the requirements of section 172(c)(9) for these areas.'' *See* also Calcagni Memorandum at 6 (''The requirements for reasonable further progress and other measures needed for attainment will not apply for redesignations because they only have meaning for areas not attaining the standard.'').

Further, CAA section 182(c)(9) refers to contingency measures applicable should an area fail to meet the applicable milestones needed for attainment. These nonattainment area requirements no longer apply after an area has attained the standard and are not applicable for purposes of redesignation. Under section 175A of the CAA, maintenance plans must contain contingency provisions, ''as deemed necessary by the Administrator,'' and it is these contingency provisions that apply to the area after redesignation to attainment. Ohio included such provisions in its maintenance plan which the EPA is approving in this action. Therefore, Ohio has satisfied the applicable requirements under CAA section 172(c)(9) and CAA section 182(c)(9). Based on the aforementioned, the State's redesignation request for the Cleveland area meets the requirements under CAA section 107(d)(3)(E)(v).

*Comment:* The commenters contend that the EPA has not finalized its proposed CDD for the Cleveland area, rendering the suspended nonattainment SIP elements such as an attainment demonstration, RFP, RFP contingency measures, and a transportation control demonstration, applicable as required under CAA section 107(d)(3)(E)(v).

*Response:* As previously mentioned, on May 14, 2026 (91 FR 27211), the EPA determined that the Cleveland nonattainment area is meeting the 2015 ozone NAAQS, effectively suspending the requirements to submit an attainment demonstration and associated Reasonable Available Control Measures (RACM), RFP plans, contingency measures, and other planning SIPs related to attainment of the 2015 ozone NAAQS, for as long as the area continues to attain the 2015 ozone NAAQS, as stated under the EPA's Clean Data regulation, 40 CFR 51.1318. *See* 83 FR 62998, December 6, 2018. This regulation, which embodies the EPA's interpretation under its ''Clean Data Policy,'' has been upheld by the D.C. Circuit. *NRDC* v. *EPA,* 571 F.3d 1245 (D.C. Cir. 2009).[4] Because the EPA determined that the Cleveland area is attaining the standard (*see* 91 FR 27211, May 14, 2026) and because the area continues to meet that standard, the State is not currently obligated to submit an attainment demonstration, RACM, RFP plans, contingency measures for failure to attain or make reasonable progress, and other planning SIPs related to attainment of the 2015 ozone NAAQS, for as long as the area continues to attain the 2015 ozone NAAQS.

*Comment:* The commenters argue Ohio's SIP does not include the State's Enhanced Monitoring Plan (EMP) as required under CAA section 182(c)(1), and that the EPA does not indicate that the SIP otherwise contains the required enhanced monitoring of $NO_X$ and VOC for the Cleveland nonattainment area.

*Response:* The EPA's adjustment of the deadline for Serious SIP revisions includes the EMP requirements under 182(c)(2). Therefore, and for the reasons discussed elsewhere, the EPA finds that the Ohio submittal met all the CAA section 107(d)(3)(E)(v) requirements under part D applicable for redesignation. The EPA is within its authority under CAA section 107(d)(3)(E) to approve Ohio's redesignation request for the Cleveland nonattainment area. The EPA will take action on the State's submitted EMP requirements in a future rulemaking.

### *C. Repealed Federal Rules*

*Comment:* The commenters argue that the EPA cannot finalize the approval of the redesignation request, the maintenance plan, or nonattainment SIP, since the redesignation requirement under CAA section 107(d)(3)(E), maintenance demonstrations required under CAA section 175A, and the transportation conformity and motor vehicle emissions budgets (budgets) required under CAA section 176(c) of Ohio's request rely on greenhouse gas (GHG) emission standards for mobile sources rules repealed by the EPA. The commenters contend the EPA cannot approve the projected emissions inventories and transportation conformity budgets in Ohio's maintenance plan, as they rely on now-repealed Federal rules that are no longer permanent and enforceable. Therefore, Ohio cannot rely on those rules to decrease emissions and, under CAA section 107(d)(3)(E)(iv) and (v), the EPA is prohibited from finalizing approval of either the maintenance plan and nonattainment SIP.

*Response:* Ohio prepared its maintenance demonstration, the onroad mobile source emissions projections, and the associated budgets using the EPA's Motor Vehicle Emission Simulator, version 5 (MOVES5), which was the EPA's latest approved motor vehicle emissions model available for SIP and transportation conformity purposes at the time the State developed its submittal. The EPA policy and longstanding practice direct states to use the most current approved version of MOVES available at the time emissions analyses are performed for SIP development.

On February 12, 2026, the EPA finalized the rescission of the Greenhouse Gas (GHG) Endangerment Finding and repealed all associated GHG vehicle emissions standards (Endangerment Finding Rescission Rule).[5] As noted above, the Cleveland maintenance demonstration was prepared using MOVES5, which includes the effects of Federal vehicle standards that were repealed by this rule. A maintenance demonstration relies on the overall projected emissions inventory and modeled future-year emissions reductions, and the EPA notes the commenters did not provide additional documentation that the resulting emissions inventories and projections fail to satisfy the applicable maintenance planning requirements of CAA section 175A. The EPA conducted an additional analysis to consider the potential effects of the repealed vehicle rules the commenters reference. In this analysis, the EPA used MOVES5 to estimate the effect of no further electric vehicle growth in the fleet, an overly conservative assumption to account for the potential impact of the Endangerment Finding Rescission Rule on projected emissions of $NO_X$ and VOCs in the Cleveland area.[6] This conservative assumption reflects no change in EV market penetration from current 2026 levels to demonstrate the possible maximum impact of these rule changes. The technical support

[4] Other courts have reviewed and considered rulemakings applying EPA's Clean Data Policy and have consistently upheld them. *See also Sierra Club* v. *EPA,* 99 F. 3d 1551 (10th Cir.1996); *Sierra Club* v. *EPA,* 375 F.3d 537 (7th Cir. 2004); *Our Children's Earth Foundation* v. *EPA,* No. 04–73032 (9th Cir. June 28, 2005) (Memorandum Opinion); and *Latino Issues Forum* v. *EPA,* Nos. 06–75831 and 08–71238 (9th Cir. March 2, 2009 (Memorandum Opinion).

[5] Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act, 91 FR 7686.

[6] To note, the EPA is not reopening any previous regulatory actions related to motor vehicles within this action nor is the Agency taking a position that any previous regulatory action would result in no change in EV market penetration in the future. This conservative assumption is used as a bounding exercise to support this regulatory action.

document in the docket of this action contains further details on the methods and results of this analysis.[7] The analysis indicates that overall $NO_X$ and VOC emissions in the Cleveland 2015 ozone NAAQS area are expected to continue to decrease through 2038, even when accounting for the effects of the Endangerment Finding Rescission Rule.

*Comment:* The commenters contend the EPA cannot approve the Enhanced I/M requirements as they rely on now-repealed Federal rules.

*Response:* As stated above, earlier this year, the EPA finalized the rescission of the GHG Endangerment Finding and repealed all associated GHG vehicle emissions standards.[8] Per the I/M rule, performance standard modeling (PSM) analyses are intended to demonstrate the performance of the I/M program through the applicable attainment date, and the EPA does not expect any impacts related to MOVES modeling from the Endangerment Finding Rescission Rule in the 2026 PSM analysis year because there are no expected impacts on criteria pollutant emissions estimates for this year. In addition, an I/M performance standard analysis is a relative comparison between an actual implemented I/M program and the applicable Federal model benchmark program. As such, in general, any potential impacts as the result of regulatory changes would similarly impact both the implemented and Federal model benchmark programs in a PSM analysis.

*D. Nonattainment New Source Review*

*Comment:* The commenters argue that the EPA's approval of the Cleveland area redesignation without approval of a Serious nonattainment NSR program contradicts the requirements of the law. They contend that the Cleveland area must first meet CAA section 182(c) Serious area nonattainment NSR requirements, including the de minimis rule under 182(c)(6) and special rules under 182(c)(7) and (8).

*Response:* The EPA disagrees with the commenters. As discussed above, since PSD requirements will apply after redesignation, areas being redesignated need not comply with the requirement that a part D NSR program (including the requirements found in section 182(c), including 182(c)(6), 182(c)(7)) be approved prior to redesignation, provided that the area demonstrates maintenance of the NAAQS without a part D NSR program. The EPA's longstanding rationale for this policy is set forth at length in the Nichols Memorandum. The State has demonstrated that the area will be able to maintain the standard without part D NSR in effect, and the State's PSD program will become effective in the area upon redesignation to attainment.

*Comment:* While the commenters acknowledge the EPA's approval of moderate nonattainment NSR requirements for the Cleveland area, they note Ohio's maintenance plan does not include nonattainment NSR as a contingency provision. They argue this prohibits the EPA from approving the maintenance plan under CAA section 175A(d) since this provision requires Serious area nonattainment NSR requirements to be in the SIP before the EPA redesignates an area.

*Response:* Part D NSR need not be retained in the SIP as a section 175A(d) contingency measure. The Nichols Memorandum clearly states, the "EPA believes it is reasonable to interpret 'measure,' as used in section 175A(d), not to include part D NSR." Congress used the undefined term "measure" differently in different provisions of the CAA, which indicates that the term is susceptible to more than one interpretation and that the EPA has the discretion to interpret it in a reasonable manner in the context of section 175A. *See Greenbaum* v. *United States EPA,* 370 F. 3d 527, 535 through 38 (6th Cir. 2004). (Court "find[s] persuasive the EPA's argument that the very nature of the NSR permit program supports its interpretation that it is not intended to be a contingency measure pursuant to section 175A(d)."). It is reasonable to interpret "measure" to exclude part D NSR in this context because PSD, a program that is the corollary of part D NSR for attainment areas, goes into effect in lieu of part D NSR upon redesignation. Under section 175A of the CAA, maintenance plans must contain contingency provisions, "as deemed necessary by the Administrator," and it is these contingency provisions that apply to the area after redesignation to attainment. Ohio included such provisions in its maintenance plan which the EPA is approving in this action.

## IV. Statutory and Executive Order Reviews

Under the CAA, the Administrator is required to approve a SIP submission that complies with the provisions of the CAA and applicable Federal regulations. 42 U.S.C. 7410(k); 40 CFR 52.02(a). Thus, in reviewing SIP submissions, the EPA's role is to approve State choices, provided that they meet the criteria of the CAA. Accordingly, this action merely approves State law as meeting Federal requirements and does not impose additional requirements beyond those imposed by State law. For that reason, this action:

- Is not a significant regulatory action subject to review by the Office of Management and Budget under Executive Order 12866 (58 FR 51735, October 4, 1993);
- Is not an Executive Order 14192 (90 FR 9065, February 6, 2025) regulatory action because this action is not significant under Executive Order 12866;
- Does not impose an information collection burden under the provisions of the Paperwork Reduction Act (44 U.S.C. 3501 *et seq.*);
- Is certified as not having a significant economic impact on a substantial number of small entities under the Regulatory Flexibility Act (5 U.S.C. 601 *et seq.*);
- Does not contain any unfunded mandate or significantly or uniquely affect small governments, as described in the Unfunded Mandates Reform Act of 1995 (Pub. L. 104–4);
- Does not have federalism implications as specified in Executive Order 13132 (64 FR 43255, August 10, 1999);
- Is not subject to Executive Order 13045 (62 FR 19885, April 23, 1997) because it approves a State program;
- Is not a significant regulatory action subject to Executive Order 13211 (66 FR 28355, May 22, 2001); and
- Is not subject to requirements of section 12(d) of the National Technology Transfer and Advancement Act of 1995 (15 U.S.C. 272 note) because application of those requirements would be inconsistent with the CAA.

In addition, the SIP is not approved to apply on any Indian reservation land or in any other area where the EPA or an Indian Tribe has demonstrated that a Tribe has jurisdiction. In those areas of Indian country, the rule does not have Tribal implications and will not impose substantial direct costs on Tribal governments or preempt Tribal law as specified by Executive Order 13175 (65 FR 67249, November 9, 2000).

This action is subject to the Congressional Review Act, and the EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a "major rule" as defined by 5 U.S.C. 804(2).

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by August 28, 2026. Filing a

[7] *See* EPA's "MOVES5 2026 AVFT Analysis for Cleveland TSD" provided in the docket of this rulemaking (Docket ID: EPA–R05–OAR–2025–3654).

[8] *See* 91 FR 7686, February 12, 2026.

petition for reconsideration by the Administrator of this final rule does not affect the finality of this action for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed, and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. (*See* section 307(b)(2).).

**List of Subjects**

*40 CFR Part 52*

Environmental protection, Air pollution control, Incorporation by reference, Intergovernmental relations, Nitrogen oxides, Ozone, Volatile organic compounds.

*40 CFR Part 81*

Environmental protection, Air pollution control, National parks, Wilderness areas.

Dated: June 23, 2026.

**Anne Vogel,**

*Regional Administrator, Region 5.*

For the reasons stated in the preamble, title 40 CFR parts 52 and 81 are amended as follows:

## PART 52—APPROVAL AND PROMULGATION OF IMPLEMENTATION PLANS

■ 1. The authority citation for part 52 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

■ 2. In § 52.1870, the table in paragraph (e) is amended under ''Summary of Criteria Pollutant Maintenance Plan'' by adding a new entry for ''Ozone (8-hour, 2015)'' before the entry for ''PM–10'' to read as follows:

**§ 52.1870 Identification of plan.**

(e) * * *

EPA—APPROVED OHIO NONREGULATORY AND QUASI REGULATORY PROVISIONS

| Title | Applicable geographical or non-attainment area | State date | EPA approval | Comments |
|---|---|---|---|---|
| * * * * * * * | | | | |
| **Summary of Criteria Pollutant Maintenance Plan** | | | | |
| * * * * * * * | | | | |
| Ozone (8-hour, 2015). | Cleveland (Cuyahoga, Geauga, Lake, Lorain, Medina, Portage, and Summit Counties). | 12/8/2025 | 6/29/2026, 91 FR [INSERT **FEDERAL REGISTER** PAGE WHERE THE DOCUMENT BEGINS]. | |
| * * * * * * * | | | | |

* * * * *

## PART 81—DESIGNATION OF AREAS FOR AIR QUALITY PLANNING PURPOSES

■ 3. The authority citation for part 81 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

■ 4. Section 81.336 is amended by revising the entry for ''Cleveland, OH'' in the table entitled ''Ohio-2015 8-Hour Ozone NAAQS [Primary and Secondary]'' to read as follows:

**§ 81.336 Ohio**

* * * * *

OHIO—2015 8-HOUR OZONE NAAQS
[Primary and Secondary]

| Designated Area [1] | Designation | | Classification | |
|---|---|---|---|---|
| | Date [2] | Type | Date [2] | Type |
| * * * * * * * | | | | |
| Cleveland, OH: Cuyahoga County, Geauga County, Lake County, Lorain County, Medina County, Portage County, Summit County. | 6/29/2026 | Attainment .......... | 1/16/2025 | Serious. |
| * * * * * * * | | | | |

[1] Includes any Indian country in each county or area, unless otherwise specified. EPA is not determining the boundaries of any area of Indian country in this table, including any area of Indian country located in the larger designation area. The inclusion of any Indian country in the designation area is not a determination that the state has regulatory authority under the Clean Air Act for such Indian country.
[2] This date is August 3, 2018, unless otherwise noted.

* * * * *

[FR Doc. 2026–13027 Filed 6–26–26; 8:45 am]

BILLING CODE 6560–50–P